IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WENDY KRAMMES,** | ) | CIVIL ACTION NO.   3:23-cv-54 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **STUDENT HEALTH SERVICES,** | ) | |
| **THE PENNSYLVANIA STATE** | ) | |
| **UNIVERSITY,** | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

I.     **PRELIMINARY STATEMENT**

Ms. Krammes faced an intense campaign of harassment and discrimination by her supervisors. By this action, Plaintiff, Wendy Krammes, seeks wage loss, compensatory and punitive damages, costs, attorneys' fees, and pre and post-judgment interest because the Student Health Services Penn State University discriminated against her due to her disability, age, and medical leave in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112 ("ADA"), Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) ("ADEA"), Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504") and Family Medical Leave Act U.S.C. § 2615. Additionally, Plaintiff seeks wage loss and compensatory damages, costs, and attorneys' fees for Defendant's parallel violations of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.

1

## II. JURISDICTION

1. This Court has jurisdiction over this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the Defendant has locations in the Western District of Pennsylvania.

3. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(c) as the Defendant conducts business in this district and has locations in McKeesport, PA, Uniontown, PA, New Kensington, PA, Beaver, PA, and Shenango, PA and is subject to the personal jurisdiction.

4. On September 12, 2021, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") against Defendant, alleging disability discrimination, age discrimination, sex discrimination, and retaliation for engaging in protected activity. Plaintiff's Charge was dual-filed with the Pennsylvania Human Rights Commission (hereinafter "PHRC").

5. The EEOC issued a Notice of Right to Sue Letter to Plaintiff on December 29, 2022. This Complaint has been filed within ninety (90) days of the Plaintiff's receipt of the letter, thus making this action timely.

6. On September 12, 2022, one-year has passed from the filing of Plaintiff's Charge with the PHRC.

### III.  PARTIES

7. Plaintiff is Wendy Krammes (hereinafter "Ms. Krammes"), an adult individual who resides in Pennsylvania.

8. Defendant, The Pennsylvania State University (hereinafter "Penn State") is a higher education institution The defendant has its main campus in State College, Pennsylvania, and its DuBois campus at 1 College Place, DuBois, Pennsylvania 15801.

9. Defendant is a recipient of federal financial assistance.

10. Defendant employs more than 50 employees within 75 miles of the location it employed Plaintiff.

11. At all relevant times, Plaintiff worked at least 1,250 hours in a calendar year.

12. In 2022, Defendant employed more than 20 employees for each working day for at least 20 weeks of the calendar year.

13. At all relevant times, Penn State is an employer within the definition of ADA.

14. At all relevant times, Penn State is an employer within the definition of Title ADEA.

15. At all relevant times, Penn State is an employer within the definition of FMLA.

16. At all relevant times, Ms. Krammes was an employee of Penn State within the definition of ADA, ADEA, and FMLA.

### IV.  STATEMENT OF CLAIM

17. On or about July 8, 2009, Penn State hired Ms. Krammes for the Student Health Services as a Nursing Specialist 3, LPN.

18. In 2020, Ms. Krammes was 52 years old.

19. In or around late 2019 or early 2020, the former Director of Nursing at Student Health Services left her position. Penn State hired Lisa Vavala as the new Director of Nursing for Student Health Services.

20. The Student Health Services had the following organization chart in 2020:

    a. Ms. Vavala was the Director of Nursing for University Health Services. Ms. Vavala reported to the Director of Student Health Services Micah Griffin.

    b. Ms. Bettyann Milliron was the Nurse Manager and she reported to Ms. Vavala.

    c. Ms. Sylvia Musheno was the Nurse Supervisor and she reported to Ms. Milliron. Ms. Krammes reported directly to Ms. Musheno.

21. Approximately fifty (50) nurses worked in Student Health Services.

22. On March 16, 2020, as a result of the COVID-19 pandemic, all of Penn State was shut down. Employees were not permitted to work on campus.

23. From March 16, 2020, until approximately two months later, all nurses were instructed to work from home.

24. On or about November 9, 2020, Penn State left Ms. Krammes off the email regarding early COVID vaccines. Other younger nurses were offered vaccines prior to Ms. Krammes. Because Ms. Krammes was not informed earlier, she was unable to be vaccinated until January 2021.

25. In or around November 11, 2020, University Health Services employees were instructed to return to working on campus, even though the rest of the campus was fully remote, and no students were permitted on campus while conducting telehealth assignments.

Penn State still had a work-from-home policy that allowed for work-from-home with permission from management.

26. On or about November 19, 2020, Ms. Krammes asked Ms. Vavala for permission to perform her telemedicine assignment ("TeleMed") from home because her 5-year-old child's daycare center was closed for having too many COVID-positive cases. While on a TeleMed rotation, Ms. Krammes did not see students on campus. She was required to see students via video conference *from the campus office.*

    a. Ms. Vavala denied Ms. Krammes' request stating it "wasn't her [Ms. Vavala's] problem."

    b. Ms. Vavala's denial was in direct violation of Penn State's policy of granting work-from-home accommodations whenever possible for coronavirus school or daycare closures.

    c. Ms. Krammes was fully trained in TeleMed and had performed TeleMed duties on a rotational basis for over a year.

    d. Ms. Vavala allowed two other newly hired LPN Nurses to work from home.

        i. The new LPN Nurses were both in their 20s and significantly younger than Ms. Krammes.

        ii. The new LPN Nurses had little experience working with TeleMed.

    e. After Ms. Krammes protested the discriminatory treatment, Ms. Vavala removed Ms. Krammes from the TeleMed schedule completely for two months.

27. On or about November 20, 2020, Ms. Krammes was denied FFCRA leave because she was involved in direct patient care.

28. On or about January 21, 2021, Ms. Krammes asked Nurse Manager Bettyann Milliron for permission to work from home due to her 5-year-old child's school closure. Penn State's COVID-19 policy and directive allowed employees to work from home if they were impacted by the COVID-19 pandemic. Ms. Milliron approved Ms. Krammes' request.

29. On or about January 22, 2021, Ms. Vavala revoked Ms. Milliron's approval and did not allow Ms. Krammes to work from home. Ms. Vavala immediately assigned the TeleMed shift to an LPN who was 20 years younger. Ms. Vavala permitted the younger LPN to work remotely for three weeks or until February 12, 2021.

30. On January 25, 2021, Ms. Krammes reported Ms. Vavala for discrimination.

31. On or about January 27, 2021, only two days later, Ms. Krammes' direct supervisor Ms. Sylvia Musheno, at the direction of Ms. Vavala, issued Ms. Krammes a written reprimand ("Written Reprimand") for not wearing safety glasses. Ms. Krammes was shocked.

    a. The incident happened on November 9, 2020, nearly two and half months prior.

    b. The policy requiring safety glasses was not enacted until November 19, 2020.

32. When Ms. Krammes questioned Ms. Musheno about the Written Reprimand, Ms. Musheno stated "[Ms. Krammes] just wanted to be on FMLA so she could just sit at home and get paid to do nothing." Ms. Musheno went on to state that Ms. Vavala said "[Ms. Krammes] was taking too much leave of absence [due to her daughter] and this issue needed to be taken care of."

33. On or about January 27, 2021, Ms. Musheno stated, "Other people here have kids and they didn't take an FMLA. You shouldn't have to take an FMLA either. You could have asked a neighbor or a family member to watch your child. When your name is on the schedule, I expect you to be here."

34. On February 9, 2021, Ms. Krammes reached out to Carmen Borges from the Office of Affirmative Action. Ms. Krammes challenged the Written Reprimand. Penn State eventually removed the Written Reprimand but did not address the FMLA retaliation.

35. On or about February 1, 2021, Ms. Krammes requested, per her Doctor's suggestion, to work from home as an accommodation for her serious medical disability of severe anxiety, situational phobia, adjustment disorder, stress-induced migraines, and insomnia (Accommodation Request). These disabilities impacted Ms. Krammes major life activities such as thinking, concentrating, sleeping, and focusing.

   a. The Accommodation Request was reasonable as there are always at least two rotating LPNs on TeleMed at any time. The Accommodation Request would not have cost Penn State any additional expenses or decreased productivity.

   b. Ms. Krammes communicated her Accommodation Request to Ms. Vavala.

   c. Ms. Vavala responded by saying, "Absolutely, not."

   d. Ms. Vavala did not engage in the interactive process.

   e. Other younger LPNs were permitted to work on TeleMed for extended periods of time including

      i. LPN Laurel Brittion, who is at least twenty years younger than Ms. Krammes and hired on September 8, 2020, was permitted to work TeleMed from February 8, 2021 - February 12, 2021.

      ii. LPN Jennifer Pisch, who is also at least twenty years younger than Ms. Krammes and hired on August 31, 2020, was permitted to work TeleMed from February 8, 2021 - February 12, 2021, and March 24, 2021, March 25, 2021, April 19, 2021, and April 23, 2021.

  iii. LPN Jessie Rogers, who is approximately ten years younger than Ms. Krammes, was allowed to work from home on January 27, 2021, until February 12, 2021.

36. On or about February 9, 2021, when Ms. Krammes could not get accommodations for her disability she was forced to take FMLA leave.

37. Ms. Krammes took FMLA from February 9, 2021, until May 9, 2021.

38. While on FMLA leave, Ms. Krammes' supervisors continued to call her. Further, she was questioned on why she took FMLA leave.

39. On or about May 14, 2021, Ms. Krammes met with Micah Griffin, Senior Medical Director per Ms. Krammes' request. Ms. Krammes explained that she experience retaliation due to her FMLA request.

40. Mr. Griffin informed Ms. Krammes that he has had other complaints regarding Ms. Vavala's behavior and intends to have a talk with her.

41. On or about May 14, 2021, Ms. Krammes received the worst annual Performance Evaluation in the entire twelve years she worked at Penn State.  Prior to May 14, 2021, Ms. Krammes received primarily Exceeds Expectations on her annual Performance Evaluations.

42. On or about August 20, 2021, Ms. Krammes sustained a back injury at work and properly filed a worker's compensation claim. Ms. Krammes sustained a Left Upper Lumbar injury.

43. On or about August 23, 2021, Ms. Krammes was assigned "light duty" restrictions which included no bending, twisting, or lifting over ten pounds. Ms. Krammes gave the restrictions to Ms. Musheno. Ms. Musheno accommodated these restrictions by assigning Ms. Krammes to TeleMed appointments.

44. On or about August 25, 2021, Ms. Musheno revoked Ms. Krammes' accommodations. When Ms. Krammes questioned Ms. Musheno's supervisor Ms. Milliron about the revocation, Ms. Milliron stated, "I've had back injuries before too. You are just going to have to adjust and adapt in order to be able to do what your job entails, just like everybody else."

45. On or about August 25, 2021, Ms. Krammes called Penn State about the denial of her accommodations. Ms. Krammes was told by Caseworker Debbie Stine, to go home if they would not follow the accommodations.

46. On or about August 25, 2021, Ms. Milliron attempted to require Ms. Krammes to clean all of the exam rooms against her accommodations. Normally, LPNs clean their own rooms, but Ms. Milliron attempted to force Ms. Krammes to clean rooms for all LPNs despite her injury. Upon information and belief, no other nurse has been assigned to solely clean rooms. Ms. Musheno attempted to force Ms. Krammes to work with multiple providers whereas other LPNs typically worked with only one or two providers. Other nurses were provided light-duty accommodations.

47. Ms. Krammes scheduled further appointments with her doctor. The dates of her appointments were posted on the schedule for all of Student Health Services to see.

48. On or about September 8, 2021, Ms. Krammes was scheduled for a Penn State Mandatory COVID Test at 1pm. Ms. Krammes usually takes lunch from 11:45am to 12:45pm. Ms. Musheno informed Ms. Krammes she would have to move her lunch break to 1pm and take the COVID test during her lunch break. Due to the way the COVID tests were performed, Ms. Krammes could have been there for an hour meaning she would not receive lunch that day. Additionally, Ms. Krammes could not have any food in the building where the COVID testing took place. This was against Penn State Policy.

49. Ms. Krammes brought to Ms. Milliron's attention that requiring Ms. Krammes to skip her lunch break was against Penn State policy. Ms. Krammes asked Ms. Milliron if they could call Human Resources for clarification on the policy. Ms. Milliron then falsely accused Ms. Krammes of wearing perfume. Wearing perfume is against Penn State policy. Ms. Krammes was not wearing any perfume.

50. On or about September 10, 2021, Ms. Krammes again reported the harassment and discrimination based on her disability and age to Penn State.

51. By September 2021, ten nurses had quit. Only one of the ten nurses was under the age of 40.

52. By September 2021, Ms. Vavala had hired five nurses. All five nurses were under the age of 40.

53. Penn State ignored Ms. Krammes' September 10, 2021, complaint. Ms. Krammes was forced to work in extreme pain due to her back injury and her boss' failure to abide by her accommodations.

54. On October 5, 2021, Ms. Krammes was constructively discharged from her position due to the harassment and retaliation. Ms. Krammes could no longer work in such extreme pain.

55. The temporal proximity to Ms. Krammes' discrimination complaints and her discharge serves as evidence of causation.

56. Upon information and belief, Ms. Krammes was replaced by a non-disabled nurse under the age of 40.

57. As a result of the discrimination, hostile work environment, and retaliation, Ms. Krammes suffered extreme emotional distress, lost wages, humiliation, inconvenience, and like injuries.

58. At all times relevant to the complaint through the present, Penn State offered/offers tuition reductions for qualified staff and faculty members under HR37 Tuition Discount for Dependents.

59. On January 28, 1938, Penn State started offering the tuition discount and continues to offer it through the present.

60. Ms. Krammes qualified for HR37 Tuition Discount for Dependents.

61. As a result of the discrimination, hostile work environment, and retaliation, Ms. Krammes lost fringe benefits including the tuition discount for herself, as she planned to pursue her bachelor of nursing degree.

62. As a result of the discrimination, hostile work environment, and retaliation, Ms. Krammes lost fringe benefits including the tuition discount for two of her children, who had applied to Penn State, were accepted by Penn State, and were enrolled at Penn State for higher education. The children who attended Penn State did not have other scholarships or options due to the tuition reduction offered by Penn State and lost funding under HR37 Tuition Discount for Dependents.

63. As a result of the discrimination, hostile work environment, and retaliation, Ms. Krammes lost fringe benefits including the tuition discount for her youngest child, who planned to attend Penn State.

64. Defendant's extreme and outrageous conduct warrants the imposition of substantial compensatory damages and punitive damages.

## V.   CLAIMS FOR RELIEF

### COUNT I - Violation of Americans with Disabilities Act Failure to Accommodate

65. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

66. Defendant failed to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.

67. As set forth above, Plaintiff is an individual with a disability because she suffers from an impairment that substantially limits one or more major life activities.

68. Plaintiff informed Defendant of that disability and requested a reasonable accommodation on several occasions.

69. Defendant failed to engage in the interactive process and failed to accommodate Plaintiff's disability, despite the availability of reasonable accommodations for Plaintiff's disability.

70. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT II - Violation of Americans with Disabilities Act Hostile Work Environment

71. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

72. As set forth above, Plaintiff is an individual with a disability because she suffers from an impairment that substantially limits one or more major life activities.

73. After Plaintiff informed Defendant of her disability, Defendant engaged in unwelcome conduct because of Plaintiff's disability that altered the terms and conditions of her employment.

74. Defendant's conduct was severe or pervasive, was offensive to Plaintiff, and would have been offensive to a reasonable person.

75. By failing to prevent and/or correct the severe or pervasive hostile work environment toward Plaintiff Defendant created a hostile work environment because of Plaintiff's disability in violation of the Americans with Disabilities Act.

76. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT III - Violation of Americans with Disabilities Act Constructive Discharge

77. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

78. Defendant created a hostile work environment because of Plaintiff's disability so intolerable that a reasonable employee would feel forced to resign, in violation Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.

79. As set forth above, Plaintiff is an individual with a disability because she suffers from an impairment that substantially limits one or more major life activities.

80. Defendant's actions toward Plaintiff were undertaken with malice and/or reckless indifference toward her federally-protected rights.

81. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT IV - Violation of Americans with Disabilities Act Retaliation

82. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

83. Defendant intentionally retaliated against Plaintiff because of her continued reasonable accommodation requests and good faith complaint of disability discrimination, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12203.

84. Defendant's decision to issue Plaintiff a poor performance plan, deny her reasonable accommodation request and otherwise harass Plaintiff was retaliatory in nature and resulted in an adverse employment action.

85. Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

### COUNT V - Violation of Age Discrimination in Employment Act

86. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

87. Plaintiff is over the age of 40.

88. Defendant has intentionally and willfully engaged in a series of unlawful acts in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of the ADEA, 29 U.S.C. § 623(a).

89. Defendant's decision to discriminate against Plaintiff on the basis of her age, as evidenced by, among other things, favorable treatment of younger, less qualified individuals.

90. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT VI - Violation of Age Discrimination in Employment Act Hostile Work Environment

91. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

92. Plaintiff is over the age of 40.

93. Defendant engaged in unwelcome conduct because of Plaintiff's age that altered the terms and conditions of her employment.

94. Defendant's conduct was severe or pervasive, was offensive to Plaintiff, and would have been offensive to a reasonable person.

95. By failing to prevent and/or correct the severe or pervasive hostile work environment toward Plaintiff Defendant created a hostile work environment because of Plaintiff's age in violation of the ADEA, 29 U.S.C. § 623.

96. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT VII- Violation of Age Discrimination in Employment Act Constructive Discharge

97. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

98. Plaintiff is over the age of 40.

99. Defendant created a hostile work environment because of Plaintiff's age so intolerable that a reasonable employee would feel forced to resign, in violation of the ADEA, 29 U.S.C. § 623.

100. Defendant's actions toward Plaintiff were undertaken with malice and/or reckless indifference toward her federally-protected rights.

101. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT VIII - Violation of Age Discrimination in Employment Act Retaliation

102. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

103. Defendant intentionally retaliated against Plaintiff because of her good faith complaint of age discrimination, in violation of the ADEA, 29 U.S.C. § 623(a).

104. Defendant's decision to issue Plaintiff a poor performance plan, deny her reasonable accommodation request and otherwise harass Plaintiff was induced by its intent to retaliate against Plaintiff.

105. Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## COUNT IX - Violation of the FMLA Retaliation

106. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

107. During her employment, Plaintiff utilized FMLA leave.

108. After Plaintiff utilized and/or attempted to utilize her qualified FMLA leave, Defendant retaliated against her.

109. Defendant retaliated against Plaintiff after she used FMLA leave by altering the terms and conditions of Plaintiff's employment.

110. Defendants willfully retaliated against Plaintiff in violation of U.S.C. § 2615(a).

111. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT X - Violation of Section 504 of the Rehab Act Failure to Accommodate

112. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

113. Defendant failed to accommodate Plaintiff's disability in violation of Section 504 of the Rehabilitation Act of 1973.

114. As set forth above, Plaintiff is an individual with a disability because she suffers from an impairment that substantially limits one or more major life activities.

115. Plaintiff informed Defendant of that disability and requested a reasonable accommodation on several occasions.

116. Defendant failed to engage in the interactive process and failed to accommodate Plaintiff's disability, despite the availability of reasonable accommodations for Plaintiff's disability.

117. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT XI - Violation of Section 504 of the Rehab Act - Retaliation

118. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

119. Defendant intentionally retaliated against Plaintiff because of his continued reasonable accommodation requests and good faith complaint of disability discrimination, in violation of Section 504 of the Rehabilitation Act of 1973.

120. Defendant intentionally retaliated against Plaintiff because of her continued reasonable accommodation requests and good faith complaint of disability discrimination, in violation of Section 504 of the Rehabilitation Act of 1973.

121. Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## **COUNT XII- Violation of the PHRA**

122. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

123. Defendant has intentionally and willfully engaged in a series of unlawful acts in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.

124. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## **COUNT XIII - Violation of Public Policy**

125. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

126. Defendant constructively discharged and otherwise retaliated against Plaintiff because she filed a Worker's Compensation claim.

127. As such, Defendant violated the public policy of the Commonwealth of Pennsylvania.

128. As a direct and proximate result of Defendant's decision to fire Plaintiff, Plaintiff has suffered damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and inconvenience.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c) Award Plaintiff wage loss damages, including back pay and front pay, damages associated with the increased tax burden of any award, and lost fringe and other benefits including long term benefits of employment;

(d) Award Plaintiff equitable relief;

(e) Award Plaintiff compensatory damages;

(f) Award Plaintiff punitive damages;

(g) Award Plaintiff pre and post-judgment interest;

(h) Award Plaintiff costs and attorneys' fees; and

(i) Grant such other relief as the Court deems just and appropriate.


Respectfully Submitted,


*/s/ Rachel L. McElroy*                                    */s/ Ralph A. Powell*
Rachel L. McElroy, Esq.                               Ralph A. Powell, Esq. (pro hoc vice)
PA ID No. 321624                                         PA ID No. 200154
McElroy Law Firm, LLC                               2110 Harpers Xing
100 First Ave., #1010                                    Langhorne, PA 19047
Pittsburgh, PA 15222                                    Phone: (215) 439 -7781
Phone: 412-620-8735                                   rpowell@rpowell-law.com
rachel@mcelroylawfirm.com

Attorney for Plaintiff                                       Attorney for Plaintiff